IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Shenzhen CARKU Technology Co., Ltd., | Case No. |
| Plaintiff, | JUDGE |
| v. | |
| Shenzhen Xinzexing E-commerce Co., Ltd., | |
| Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT AND UNFAIR COMPETITION**

Plaintiff, Shenzhen CARKU Technology Co., Ltd., ("Carku") through its undersigned counsel, submits its complaint for patent infringement and unfair competition against the Defendant, Shenzhen Xinzexing E-commerce Co., Ltd. ("SXE"), and demands a trial by jury on all claims so triable. As described below, the NEXPOW® jump starter products sold by SXE into the United States at least through Amazon.com, the Amazon Warehouse, NEXPOWER-US@Amazon.com, AMZTOBY@Amazon.com (collectively "Amazon"), *i.e.*, the NEXPOW 1000, 1500, 2000, and 2500 model jump starters (collectively the "NEXPOW Jump Starters" or "SXE Jump Starters"), infringe U.S. Patent No. 9,643,506 ("the '506 Patent") either literally or under the doctrine of equivalents. SXE is also engaging in unfair competition against Carku through its false and misleading advertising of the SXE Jump Starters.

In support of its claims, Carku alleges as follows:

**NATURE OF THE ACTION**

1.      This is a complaint for patent infringement arising under the patent laws of the United States (Title 35 of the United States Code). This is also a complaint for unfair competition (false advertising) arising under the Lanham Act, 15 U.S.C. Section 1125.

## PARTIES

2. Shenzhen CARKU Technology Co., Ltd. is a limited liability company organized and existing under the laws of China, with a principal place of business at Building A, Qixing Creative Square, Lianrun Rd., Gaofeng Community, Dalang Street, Longhua District, Shenzhen, Guangdong, China 518109.

3. On information and belief, Defendant Shenzhen Xinzexing E-commerce Co., Ltd. ("SXE") is a corporation organized and existing under the laws of China, with its principal place of business at A2901, 3rd Bldg, Chuanlinshanglin, Xinsheng Village, Longgang Street, Longgang District, Shenzhen, Guangdong, China 518000.

## JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction over the claims in this action under 28 U.S.C. §§ 1331, 1337(a) and 1338(a).

5. Venue is proper in this District under 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over SXE because SXE directly targets consumers in the United States, including Illinois, through at least the fully interactive commercial webpages it operates which are available to consumers throughout the United States, including Illinois, through the website Amazon.com, which hosts the Amazon Marketplace.

6. Specifically, Federal Rule of Civil Procedure 4(k)(2) subjects SXE to personal jurisdiction in this Court. Because SXE is a Chinese company, it is not subject to personal jurisdiction in any state's courts of general jurisdiction. Exercising jurisdiction over SXE is consistent with the Constitution and laws of the United States because SXE actively targets and sells products through interstate commerce to United States consumers. The domain Amazon.com is specific to the United States. It is designed to reach United States consumers and targeted towards United States consumers. SXE markets and sells the products at issue to United States consumers through the Amazon Marketplace and thereby directs its infringing and deceptive commercial activities to the United States.

7. SXE reaches out to do business with Illinois residents in this judicial district at least by operating its webstores in the Amazon Marketplace through which Illinois residents can purchase SXE's infringing products and be deceived by its false or misleading advertising. Product listings do not populate on Amazon.com unless the seller actively creates and posts that listing. SXE has targeted sales to Illinois residents by operating online stores offering shipping to the United States, including Illinois, accepting payment in U.S. dollars and, on information and belief, selling infringing products to Illinois residents. Carku distributors compete with SXE in the Amazon Marketplace. SXE has committed tortious acts in Illinois while engaging in interstate commerce and has wrongfully caused Carku substantial injury in the State of Illinois.

## CARKU AND U.S. PATENT NO. 9,643,506

8. Carku (http://www.car-ku.com) is based in Shenzhen, China. Carku was founded in 2011 and has continued to develop and advance its innovative, patent-protected core technology for so-called "smart" jump starters.

9. Carku has grown rapidly since releasing its first portable jump starter powered by lithium battery technology in 2011 (the E-Power Elite series of products). Starting from thirty employees in one small factory, Carku's innovative, patented smart chargers using lightweight and powerful lithium-polymer batteries have placed and kept Carku solidly among the industry leaders.

10. On December 9, 2011, Carku filed the Chinese patent application which led to Carku's U.S. Patent No. 9,643,506 ("the '506 Patent") (with the listed inventor Xingliang ("Leon") Lei) which duly and legally issued on May 9, 2017. A copy of the '506 Patent is attached as **Exhibit 1**.

11. Speaking generally, the '506 patent discloses (among other things) a portable backup battery charger having two operating modes/output currents each coupled with their respective protection circuit (<u>e.g.</u>, a charging current for electronic devices through a USB port and a current for jump starting vehicles). The '506 patent is among the first generation of patents to disclose so-called smart jump starters.

12. In 2014, Carku played a significant role in drafting China's first industry standards for jump starters.

13. In August 2015, Carku earned ISO/TS 16949:1999 certification for its quality management system. In November, 2015, Carku opened a 30,000 m$^2$ factory facility in Huizhou, Guangdong, China. By that time, the company had grown to roughly 400 employees, about half of them employed in the factory. In 2015, Carku's yearly sales rose to roughly ¥ 2 billion (more than $300 million).

14. In 2016, many Carku jump starter models received CE certifications — indicating that the products satisfied EU health, safety, and environmental requirements and could be sold throughout Europe. Some models received FCC certification, meaning that their electromagnetic emissions meet U.S. federal guidelines. In June 2016, Carku earned ISO9001:2008 certification for its quality management system. Carku's yearly sales in 2016 rose to around ¥ 3 billion (more than $450 million).

15. In July 2019, after a rigorous audit, Amazon named Carku an "Amazon Gold Supplier" based on factors including industry experience, product development capabilities, and product testing capabilities.

16. In July 2020, Carku broke ground on a new facility — the Carku Huizhou Industrial Park — which will include a new corporate headquarters building and new, more efficient R&D and manufacturing sites for Carku's smart jump starter product line.

17. Carku is one of China's leading manufacturers, and one of the world's leading suppliers, of lithium battery-powered vehicle jump starters. Carku jump starters and other power products are sold on every continent except Antarctica. Today, Carku sells more than 20 models of portable jump starters for 12V and 24V applications, as well as specialized combination products and portable power stations. With several hundred employees, including about fifty members on its Research & Development Team, Carku can produce millions of units annually.

18. Carku now holds scores of patents world-wide, including about a dozen U.S. patents directed to battery chargers, jump-starters, and other power products.

## SXE'S INFRINGING ACTIVITIES

19. Carku incorporates into this section by reference the allegations in Paragraphs 1 - 18 of this Complaint.

20. SXE, itself and through parents, divisions, subsidiaries and/or agents is engaged in the business of manufacturing, marketing, distributing, and selling a variety of automobile accessories, primarily portable automobile jump starters, chargers, and power banks. On information and belief, SXE promotes multiple product lines, which include the NEXPOW® brand.

21. The infringing NEXPOW® products sold by or on behalf of SXE include at least the following models:

(a) the NEXPOW® Battery Starter T11F 1000A – 10400mAh ("NEXPOW 1000") (ASIN[1]: B07X7YZYFV)

https://www.amazon.com/NEXPOW-battery-starter-Battery-Booster/dp/B07X7YZYFV/ref=sr_1_2?crid=3NRB5G3468HUR&keywords=B07X7YZYFV&qid=1655252671&sprefix=b07x7yzyfv%2Caps%2C942&sr=8-2 ;

(b) the NEXPOW® Battery Starter G17 1500A ("NEXPOW 1500") (ASIN: B07T9S3Q5N)

https://www.amazon.com/NEXPOW-Battery-Starter-21800mAh-Charge/dp/B07T9S3Q5N/ref=sr_1_1?crid=1FT5QRXAHC149&keywords=B07T9S3Q5N&qid=1655245963&sprefix=b07t9s3q5n%2Caps%2C110&sr=8-1 ;

(c) the NEXPOW® Battery Starter KG or G17 2000A ("NEXPOW 2000") (ASIN: B087LRFYDB)

https://www.amazon.com/NEXPOW-18000mAh-Starter-Portable-Battery/dp/B087LRFYDB/ref=sr_1_5?crid=ATODZ2V9HLOD&keywords=B087LRFYDB&qid=1655248472&sprefix=b07t9s3q5n%2Caps%2C548&sr=8-5 ; and

---

[1] "ASIN" is an acronym for Amazon Standard Identification Number. This is a unique identifier assigned by Amazon to a particular product listing.

(d) the NEXPOW® Battery Starter Q9B ("NEXPOW 2500") (ASIN: B082ZZ2W14) https://www.amazon.com/Battery-NEXPOW-22000mAh-Portable-Q9B/dp/B082ZZ2W14/ref=sr_1_2?crid=1XAD8WRPQIWF3&keywords=B082ZZ2W14&qid=1655245556&sprefix=b082zz2w14%2Caps%2C143&sr=8-2.

22. SXE infringes the '506 Patent in violation of 35 U.S.C. §§ 271 by making, using, offering to sell, selling, and/or importing the NEXPOW Jump Starters because those products satisfy each element of at least claim 1 of the '506 Patent as described below.

23. Each infringing NEXPOW® Jump Starter has similar electronic designs and functions: (1) a "main box" containing a lithium-ion battery as the internal power supply; (2) the battery is configured to operate in two modes – a first current output through output ports in a first operating mode (e.g., DC electric current output through USB ports for charging electronic devices, such as a mobile phone) and a second current output capable of starting a vehicle engine through a pair of output terminals in a second operating mode (e.g. electric current through a smart jumper cable having a two-pin connector, two insulated cables, and two clamps for jump starting a vehicle) (see above devices); (3) the second current (the jump starting current) is higher than the first current (e.g., a 400A jump start current vs. a 2.1-3.0A USB charging current); (4) each current output has its own protection circuit to protect the battery and/or to prevent an overcurrent condition from developing in its respective operating mode (i.e., a first protection circuit for the first current output and a second protection circuit for the second current output).

24. The structure, configuration and function of the NEXPOW® Jump Starters demonstrate that the NEXPOW® jump starters fall within the scope of claims 1, 6-14, 16-17, 19-21, 25-28, 30-31, and 33 of the '506 Patent, either literally or under the doctrine of equivalents.

25. By way of example, Carku provides a summary infringement analysis below comparing the NEXPOW 1000 model with independent claim 1 of the '506 Patent. The other accused NEXPOW products are structurally similar to NEXPOW 1000, and therefore fall within the scope of claim 1 of the '506 patent for the same reasons as does the NEXPOW 1000.

26. Claim 1 recites:

1. A portable backup charger, comprising:

[1.1] a battery pack having at least one battery cell;

[1.2] at least one output port coupled to the battery pack,

   [1.3] wherein the battery pack is configured to output a first current through one or more output ports of the at least one output port in a first operating mode;

[1.4] a pair of output terminals coupled to the battery pack and

   [1.5] having a current path to the battery pack different from that of the at least one output port to the battery pack,

   [1.6] wherein the battery pack is configured to output a second current capable of starting a vehicle engine through the pair of output terminals in a second operating mode,

   [1.7] wherein the second current is higher than the first current;

[1.8] a first protection circuit coupled to the battery pack and

   [1.9] configured to protect the battery pack when the battery pack is working in the first operating mode; and

[1.10] a second protection circuit coupled to the battery pack and

   [1.11] configured to prevent overcurrent condition of the second current when the battery pack is working in the second operating mode.

27. Specifically, as shown in Exhibits 2 and 2A, the NEXPOW 1000 is a portable charger, which can charge electronic devices, such as a mobile phone, and deliver current to a vehicle battery to jump start its engine. The NEXPOW 1000 product has an internal battery, which contains at least one battery cell (**Element 1.1**). The product also includes USB output ports coupled to the battery pack ("at least one output port coupled to the battery pack" – **Element 1.2**). According to the product webpage (Exhibit 2A), the jump starter includes at least one USB output port rated at 5V/2.1 (the "at least one output port in a first operating mode" – **Element 1.3**). Those

output rating show the USB output ports are built to charge electronic devices. (**Element 1.3**)

28. The NEXPOW 1000, as indicated in the product name (Exhibit 2A), is a jump starter and includes a smart jumper cable coupled to the battery pack. The jumper cable has a pair of clamps designed to connect to the vehicle engine/battery ("a pair of output terminals" – **Element 1.4**), a pair of wires electrically connecting the clamps to the battery, a built-in PCB board, and two corresponding connectors to couple the cable to the battery pack. As shown in Exhibit 2, the jumper cable (for the jump start current to go through) and the USB ports use different internal wiring (*See* the main box wiring of the NEXPOW 1000 – **Element 1.5**). The product webpage shows that the device's battery pack is configured to output sufficient current to jump start a vehicle (a "second current capable of starting a vehicle engine") through the jumper cable/clamps (the pair of output terminals). The jump start mode of the product is the "second operating mode". (*See* **Element 1.6** of Exhibit 2). Tests of the NEXPOW 1000 shows the product can output a 100A jump start current, which is higher than the USB current output of around 2.1A. (**Element 1.7**).

29. Analysis of the NEXPOW 1000 reveals that it includes a protection circuit for its USB output port ("a first protection circuit" – *See* **Element 1.8**). The specific electronic components of that protection circuit (**Element 1.8**) are described in Exhibit 2. A test showed that when the output current through the USB port is 3.4A, the main board operates normally, but when the output current through the USB port would be 3.5A, the main board switches off the USB output. Clearly, for NEXPOW 1000 product, the first protection circuit (to protect the device battery when in USB output mode – the first operating mode) is triggered when the USB output current reaches 3.5A. (*See* **Element 1.9**).

30. Analysis of the NEXPOW 1000 also reveals that it includes a protection circuit for the jump starter output ("a second protection circuit" – *See* **Element 1.10**). The specific electronic components of the protection circuit for the output in jump start mode are described in Exhibit 2, **Element 1.10**. The protection circuit is located in the smart jumper cable, outside of the main box of the product. A test showed that when the DC jump start current is drawn at 100A, the current lasts for a full 3 second jump-start period. But when the jump start current is drawn at 500A, it

lasts for only 0.620 seconds and then drops to zero before the end of that first second. This shows that in the NEXPOW 1000 product, the second protection circuit (to prevent overcurrent when in jump start mode) is triggered by or before the time the jump start current reaches 500A. (*See* **Element 1.11**).

31. As shown above, the NEXPOW 1000 satisfies each and every element of claim 1.

32. Analysis of the NEXPOW 1000 shows that the product also falls within the scope of claims 6-14, 16-17, 19-21, 25-28, 30-31, and 33 of the '506 Patent.

33. Therefore, the NEXPOW 1000 Jump Starter infringes claims 1, 6-14, 16-17, 19-21, 25-28, 30-31, and 33 of the '506 Patent either literally or under the doctrine of equivalents.

34. Similar infringement analyses for the NEXPOW 1500, 2000, and 2500 are provided in Exhibits 3/3A, 4/4A, and 5/5A, respectively. These show that the NEXPOW 1500, 2000, and 2500 models also infringe claims 1, 6-14, 16-17, 19-21, 25-28, 30-31, and 33 of the '506 Patent.

## SXE'S FALSE ADVERTISING OF ITS JUMP STARTERS

35. SXE is a direct competitor of Carku's distributors in the United States market for smart jump starters. SXE, itself or through its agents, sells and offers for sale jump starters to consumers throughout the United States via various online commerce sites including, but not limited to, Amazon.com.

36. SXE advertises at least five different smart jump starter models on Amazon. SXE represents that each of those models has a certain battery capacity (either in the name of the product, in the description on the product webpage, or both). Examples include the product names "NEXPOW 2000 – 21800mAh" and "NEXPOW 2500 – 22000mAh." These representations about battery capacity are prominently located on the Amazon.com product pages for SXE's jump starters. They are disseminated widely and available to every online shopper in the United States.

37. SXE's representations about battery capacity are literally false and significantly overstate the actual battery capacity of the SXE jump starters.

38. Claims made regarding the battery capacity of a jump starter are material to consumer purchasing decisions.

39. Product reviews on the Amazon.com product pages for the SXE jump starters show consumers voicing their concern and dissatisfaction over SXE's inflated battery capacity claims.

40. For example, customers left the following feedback for SXE jump starters:

the NEXPOW 1500 – 21800mAh

 Karen

★☆☆☆☆ **Only 12,800mah**
Reviewed in the United States on June 6, 2020
**Verified Purchase**

This claimed capacity is a lie. I just got mine, charged it fully, and tested the capacity with a watt meter and a test load. The actual capacity is 48 watt-hours this is a 12,800mah power bank being falsely advertised. Look elsewhere. I really hate companies that lie. Will report to Amazon as well.

, the NEXPOW 2000 – 18000mAh

★★★☆☆ **Decent product w/good accessories - updated ratings post follow-up to address concerns**
Reviewed in the United States on March 11, 2021
**Verified Purchase**

Update - June 2021

Original Review - April 2021
I purchased this car jump battery because of the good review and the accessories included with the product. I will list out the pros and cons. But ultimately, I decided to return the product because of misleading/stated capacity and lack of proper product support.

2) Stated battery capacity. The stated capacity of the battery is 18,000mAh. I tested recharging the battery pack after 2 full-drain by using different voltmeter (one is USB-C, and another one is USB-A, both photos included). And the actual amount charged into the battery pack is at most 10,958mAh, or just shy of 61% and way below the stated 18,000mAh.

, and the NEXPOW 2500 – 22000mAh

 Tim Elliott

★★☆☆☆ **No way near 22000mAh**
Reviewed in the United States on August 17, 2021
**Verified Purchase**

This power source in nicely packaged and seems to work for smaller starting issues but the battery capacity is no way near the stated 22000mAh. I've tested the battery pack on three different battery testers and the pack measures 3952mAh on one and 4022 on the second with the third showing 3995. I don't understand why the pack is advertised as 22000mAh when it is at most 1/4 of that capacity. When used on a diesel forklift with a 3 liter engine it could not provide enough power to turn it over and start. Purchased it to use on our small fleet of gas and diesel forklifts when their batteries when down and this was not the solution I was hoping for.

10

41. Tests performed on the SXE jump starters produced the results summarized in the following table.

| NEXPOW Starter | Labeled Battery Capacity (mAh) | Actual Battery Capacity (mAh) | % Overstatement |
|---|---|---|---|
| 1000 | 10400 | 7657.6 | 35.8% |
| 1500 | 21800 | 15875.4 | 37.3% |
| 2000 | 18000 | 12532.8 | 43.6% |
| 2500 | 22000 | 16709.2 | 31.6% |

42. Purchasers of SXE's jump starters are likely to be, and have actually been, deceived by SXE's literally false product labeling, descriptions, and advertisements. Consumers expect the represented product specifications for jump starters to be accurate and base their purchasing decisions in large part on the represented product specifications. But consumers who purchase SXE's jump starters receive jump starters with drastically lower performance and capability.

43. SXE's literally false and misleading product labeling, descriptions, and advertisements not only harm consumers, but also damage Carku in multiple ways. First, by publishing and disseminating false product specifications regarding its "smart" jump starters sold in the United States, SXE damages the reputation and goodwill of all companies who manufacture and/or sell smart jump starters in the United States by causing consumers to lose faith in the veracity of the published specifications. This is particularly true as to brands manufactured or sold by companies like Carku which are also based in China. Second, jump starters manufactured by Carku and sold by Carku's distributors directly compete with SXE jump starters sold through Amazon.com, so SXE's inflated sales due to its false advertising come at Carku's expense.

44. SXE's false and misleading representations regarding the battery capacity of its products enable SXE to use subpar, lower-than-normal grade batteries in its products, which provides SXE a higher profit margin than its competitors at the same price point.

45. SXE's false and misleading representations regarding the battery capacity of its products also allow SXE to sell its jump starters at a lower price to entice consumers to purchase SXE's products rather than products manufactured by Carku and sold by Carku's distributors, and

to thus obtain unfair competitive advantage over Carku and its distributors.

46. The natural, probable, and foreseeable result of SXE's wrongful conduct is to deprive Carku of business and goodwill, to injure Carku's relationship with existing and prospective U.S. customers, and to divert sales from Carku and its distributors to SXE.

47. SXE and Carku compete in the mid-range price segment of the smart jump starter market in the United States. However, SXE's wrongful conduct will drive consumers who have been deceived by SXE's false representations and are dissatisfied with SXE's product to avoid both SXE's products and similarly-priced smart jump starters in the future. Poor experiences with SXE jump starters falsely represented as having a significantly higher battery capacity leave consumers with a negative impression of the jump starters sold in that market segment, especially those brands made and sold by foreign companies such as Carku and many Carku distributors. This causes Carku irreparable harm.

48. Carku is informed and believes that SXE's wrongful conduct has resulted in increased sales of the SXE jump starters while hindering the sales of Carku's jump starters and damaging Carku's goodwill. Carku has sustained harm and irreparable harm as a result of SXE's wrongful conduct, which will continue unless enjoined.

**<u>COUNT I</u>**

**(Infringement of the '506 Patent Under 35 U.S.C. § 271)**

49. Carku restates and incorporates by reference the allegations in paragraphs 1-48 above as if set forth fully herein.

50. In view of the foregoing, SXE's sale of the NEXPOW jump starters infringes the '506 patent under 35 U.S.C. § 271(a).

51. SXE has manufactured, imported, supplied, distributed, sold, and/or offered for sale the infringing NEXPOW Jump Starters through Amazon.

52. SXE's infringement of the '506 Patent is ongoing and will continue unless and until enjoined by this Court.

53. SXE's infringement has caused and, unless restrained by this Court, will continue

to cause monetary damage to Carku in an amount to be proven at trial. Carku is entitled to be compensated by SXE in an amount no less than a reasonable royalty, together with interest and costs pursuant to 35 U.S.C. § 284.

54. SXE's infringement has caused, will continue to cause, serious and irreparable harm to Carku for which Carku has no adequate remedy at law unless SXE is enjoined by this Court from further infringement of the '506 Patent pursuant to 35 U.S.C. § 283.

## COUNT II

### False Advertising in violation of Section 43(a) of the Lanham Act

55. Carku restates and incorporates by reference the allegations in paragraphs 1-54 above as if set forth fully herein

56. SXE has made and distributed, in interstate commerce and in this judicial district, product listings and advertisements containing literally false and misleading statements of fact regarding its SXE smart jump starters.

57. These false and misleading advertisements contain literally false and misleading statements, including at least representations regarding the battery capacity of the SXE jump starters – a performance specification material to consumer purchasing decisions.

58. SXE's literally false or misleading statements actually deceive, or have a tendency to deceive, a substantial segment of the customers and potential customers of SXE and of its competitors, including Carku's distributors. This deception is material because it is likely to influence consumer purchasing decisions.

59. SXE's false and misleading advertisements constitute unfair competition and injure both consumers and Carku.

60. SXE's false and misleading advertisements violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

61. SXE, as described more fully above, has caused, and will continue to cause, immediate and irreparable injury to Carku for which there is no adequate remedy at law.

62. Carku is therefore entitled to an injunction under 15 U.S.C. § 1116 restraining

SXE, its distributors, retailers, agents, employees, representatives, and all persons acting in concert with it from engaging in further acts of false advertising, and ordering removal of all of SXE's false advertisements from the marketplace.

63. Pursuant to 15 U.S.C. § 1117, Carku is entitled to recover from SXE the damages sustained by Carku as a result of SXE's violations of Section 43(a) of the Lanham Act in an amount to be proven at trial.

64. Pursuant to 15 U.S.C. § 1117, Carku is also entitled to recover from SXE the gains, profits, and advantages SXE has obtained as a result of its unlawful acts. Carku is presently unable to ascertain the full amount of such gains, profits, and advantages SXE has obtained by reason of its unlawful acts.

## PRAYER FOR RELIEF

**WHEREFORE**, Carku respectfully prays for judgment and relief as follows:

A. Entering judgment that SXE has infringed the '506 Patent;

B. Ordering that SXE, its officers, directors, employees, agents, affiliated entities, and all parties in active participation or in privity with them, be permanently enjoined from infringing the '506 Patent;

C. Ordering SXE to pay damages to Carku adequate to compensate it for the infringement described in this Complaint, together with interest and costs;

D. Entering judgment that SXE has engaged in false advertising in violation of 15 U.S.C. § 1125(a), including making and disseminating false representations regarding the battery capacity of the SXE jump starters;

E. Ordering that SXE, its officers, directors, employees, agents, affiliated entities, and all parties in active participation or in privity with them, be permanently and preliminarily enjoined from further false advertising regarding the SXE jump starters;

F. Ordering SXE to pay damages to Carku adequate to compensate it for the damages Carku has suffered due to SXE's false advertising described in this Complaint, together with interest and costs;

G. Ordering SXE to disgorge its profits from SXE's false advertising described in this Complaint, together with interest;

H. Awarding Carku enhanced damages for SXE's wrongful conduct in an amount three times the actual damages proven at trial;

I. Declaring this case exceptional and awarding Carku its reasonable attorney fees; and

J. Granting Carku all other legal and equitable relief the Court finds just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Carku hereby demands a trial by jury for all claims and issues that are triable by right.

Date: June 29, 2022

ANALECTS LEGAL LLC

By: *Peter J. Curtin*
Peter J. Curtin (6332596)
**ANALECTS LEGAL LLC**
1101 North Euclid Avenue
Oak Park, IL 60302-1218
E-mail: pcurtin@analectslegal.com
Tel: 1.240.432.3267

Yichen Cao, Ph.D., J.D.
**ANALECTS LEGAL LLC**
3900 GABRIELLE LN # 6072
AURORA, IL 60598-8801
   E-mail: ycao@analectslegal.com
Tel: 1.630.386.5514

*Attorneys for Plaintiff Shenzhen
   CARKU Technology Co., Ltd.*

15